UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN MARTORANA,

    Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, ET AL,

    Defendants.
    _____/

Case No. 11-10312

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [25, 26, 27]**

    Plaintiff Kevin Martorana's claims arise out of eviction proceedings. He does not question the earlier foreclosure and sheriff's sale of his former residence on Newcastle in Warren, Michigan. Rather, Plaintiff complains that, after he had defaulted on a mortgage loan securing the Newcastle residential property, after the property had been sold at a sheriff's sale, after the statutory redemption period had expired, and after he was no longer living at the Newcastle property, the personal property that he had left behind was improperly removed by someone. Plaintiff is unable to identify who removed his property because he was no longer living at the Newcastle premises when it was removed and was not present when the removal happened. His best guess is that a bailiff/court officer of the 37th District Court removed his personal belongings from the residence. (Pl.'s Dep. at 63, 69, 78.) Plaintiff, however, is not suing that court officer. Rather, Plaintiff is suing Federal National Mortgage Association ("FNMA"), the purchaser of Plaintiff's foreclosed home at

a January 29, 2010 sheriff's sale; Orlans Associates, P.C. and Elizabeth Messing (collectively "Orlans" Defendants), the law firm and firm attorney retained by FNMA to handle the September 2010 eviction proceedings that are the focus of Plaintiff's claims; and Tom Early, Lucy Early, and Early Realty, LLC (collectively "Early" Defendants), who FNMA hired to monitor the Newcastle property throughout foreclosure and who, on or about September 29, 2010, listed the Newcastle property for sale, placed a lockbox on the front door, and displayed a sign in the front window of the Newcastle property. Plaintiff alleges the following claims against each of these Defendants: (1) ejection and detainer, in violation of Mich. Comp. Laws § 600.2918(1); (2) unlawful interference with a possessory interest in violation of Mich. Comp. Laws § 600.2918(2); (3) trespass, (4) invasion of privacy, (5) abuse of process, (6) intentional infliction of emotional distress, (7) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692f, and (8) violation of Michigan's Consumer Protection Act.

Plaintiff concedes in his response that his Fair Debt Collection Practices Act and Michigan Consumer Protection Act claims should be dismissed with prejudice. (Pl.'s Resp. at 16.) For the reasons stated more fully below, Plaintiff's remaining claims are dismissed with prejudice, and Defendants' motions are GRANTED.

**I.   Facts**

   **A. Mortgage/Foreclosure/Sheriff's Sale/Expiration of Redemption Period**

In March 2004, Plaintiff executed a $173,000.00 mortgage loan on residential property located at 32434 Newcastle, Warren, Michigan. (Orlans Defs. Mot., Ex. 1, 3/01/04 Mtge.) He defaulted on the loan in February 2009. (Pl.'s Dep. at 17.) The property was subsequently sold to Defendant FNMA at a sheriff's sale on January 29, 2010. (Orlans

2

Defs. Mot., Ex. 3, 1/29/09 Sheriff's Deed on Mtge Foreclosure.) The six-month statutory redemption period expired on July 29, 2010 without Plaintiff exercising his right to redeem (Pl.'s Dep. at 73), and title vested in FNMA – the holder of the sheriff's deed. Despite failing to exercise his right to redeem, Plaintiff failed to vacate or turn possession of the property over to FNMA. From July 29, 2010 to late August 2010 – the date when Plaintiff removed most of his belongings and no longer lived at the Newcastle property – it is undisputed that Plaintiff had no rental agreement for that residence or paid any rent to live there. The same is true for the time period Plaintiff claims the personal belongings he left behind were wrongfully removed. (Pl.s Dep. at 74, 77-78.)

**B. Eviction Proceedings - 37th District Court Conflicting Orders/Judgments**

On August 11, 2010, FNMA retained Defendant Orlans, a Michigan law firm that represents lenders, services, and other entities in the mortgage industry, to commence summary eviction proceedings. Defendant Elizabeth Messing is employed by Orlans as an attorney. (E. Messing Aff. ¶¶ 4, 6-7.)

On August 12, 2010, Messing, on behalf of FNMA, filed a complaint for possession of the Newcastle property with the 37th District Court, and the matter was scheduled for a hearing on September 3, 2010. (Orlans Defs.' Mot., Ex. 6, Complt.) According to a summons filed with the 37th District Court, the Court Clerk mailed the summons to Plaintiff by first class mail on August 27, 2010, notifying him that (1) a complaint was filed to evict him from the Newcastle property, (2) a hearing was set for September 3, 2010 at 8:45 a.m. in courtroom 2, and (3) warning him that if he failed to appear at that date and time, he may be evicted without a trial. (Early Defs.' Mot., Ex. D, Summons.)

3

Plaintiff testified, however, that the summons he received from the Court notified him that a hearing was set for September 3, 2010 at 9:30 am. in courtroom 2.  (*Compare* Early Defs.' Mot., Ex. D, 8/16/10 Summons *with* Orlans Defs.' Mot, Ex. 8, 8/16/10 Summons and "How to get legal help" section.)  There is nothing in the record showing that the Orlans Defendants intentionally placed two different times on two different Summons.  It is undisputed, however, that the Court Clerk certified that the Summons with the 8:45 a.m. time was mailed to Plaintiff on August 27, 2010.

Court Officer Robert Muszynski also filed a proof of service with the Court declaring that, on August 18, 2010, he personally served Plaintiff by attaching the summons, complaint, and attachments to the main entrance of the Newcastle residence. (Def. Early's Mot., Ex. D, 8/18/10 Proof of Service.)  There is nothing in the record that conclusively establishes whether the summons attached to the Newcastle residence had the 8:45 a.m. or 9:30 a.m. time.

On the last weekend in August 2010, after he received notice of the eviction proceedings, Plaintiff rented a 28-foot truck and moved most of his and his adult children's personal belongings out of the Newcastle premises.  (Pl.'s Dep. at 8-17.)  As of September 3, 2010, Plaintiff and his adult children were no longer residing at the Newcastle residence. (Pl.'s Dep. at 17-18.)

On September 3, 2010, Defendant Orlans, who apparently got the summons with the 8:45 a.m. time, appeared in court at that time.  Plaintiff, who testified that he received only the summons with the 9:30 a.m. time, did not appear at 8:45 a.m.  Because Plaintiff failed to appear at 8:45 a.m., Defendant Orlans followed the customary practice for the 37th

4

District Court and submitted a default judgment to the Clerk for the Judge's signature and entry into the court file. (E. Messing Aff. ¶¶ 10-11.)

On September 3, 2010 at 11:30 a.m., a signed default judgment in favor of Defendant FNMA was filed in the 37th District Court. It notified Plaintiff that "[a]n order evicting you (writ of restitution) will be issued on or after 9/13/2010 unless you move," and advised Plaintiff that he "may file a motion . . . to set aside a default judgment . . . [that] must be filed by 9/13/10." (E. Messing Aff. ¶ 12; Orlans Defs.' Mot., Ex. 9, 9/3/10 Judgment.) The certificate of mailing on that Judgment certifies that a copy was mailed to the parties by ordinary mail by the Deputy Clerk on September 3, 2010. (*Id.*)

Plaintiff testified that he appeared at 37th District Court before 9:30 a.m., was informed that the case was already addressed and showed the Clerk his summons with the 9:30 a.m. time. The Clerk told Plaintiff that the default judgment the Court had entered would be voided and that a new hearing would be set, but did not provide him with any documents to that effect. Plaintiff contends that the Clerk told him that he should contact her personally if he did not receive papers from the Court by mail within a week. Plaintiff, however, did not contact the Court until ten days later, on September 13, 2010. (Pl.'s Dep. at 40-42.)[1]

On September 13, 2010, Plaintiff's mother picked up his mail from the Newcastle address. After opening his mail, Plaintiff learned that he was supposed to appear at the 37th District Court that same day. He immediately called the Court and informed them that the notice arrived too late. Plaintiff testified that some unnamed individual at the Court told

---

[1]Between September 3, 2010 and September 13, 2010, Plaintiff continued to move his personal belongings out of the Newcastle property. (Pl.'s Dep. at 44.)

5

him that the other party had also notified the Court that it had received the notice too late and so the hearing was being cancelled and another notice would be mailed out. (Pl.'s Dep. at 41, 44-46.) Plaintiff claims he received a new notice a couple of days later with an October 2010 hearing date. (Pl.'s Dep. at 46.)

On September 14, 2010, Attorney Messing reviewed Plaintiff's eviction file. She observed a notation that a member of the firm had contacted the 37th District Court to confirm the "Writ-to-issue" date and was informed by a clerk named Robin that it could issue after September 13, 2010. Attorney Messing then signed an Application and Order of Eviction (the "Writ") and submitted it to the 37th District Court. The Writ stated that a judgment had been entered against Plaintiff on September 3, 2010, and that Defendant FNMA had been awarded possession of the Newcastle property. (E. Messing Aff. ¶¶ 12-18.) Prior to executing the Writ, Attorney Messing avers that neither the Plaintiff nor the Court notified the Orlans Defendants that there had been a change in the status of the case. So, given the normal procedures of the 37th District Court, there was no reason to believe that the default judgment was invalid or that a Writ should not be submitted to the Court on September 14, 2010. (E. Messing Aff. ¶¶ 19-20.) The Orlans Defendants had no further involvement with this matter until it received notice in October 2010 that the matter was being reset for a termination hearing. Attorney Messing attests that there is no earlier notice of a termination hearing in the Orlans' firm's files. (E. Messing Aff. ¶¶ 19-20.)

On September 22, 2010, a 37th District Court Judge signed the Writ. (Orlans Defs.' Mot., Ex. 11.) It is the local practice of the 37th District Court to forward a signed Writ to the assigned court officer for execution. (E. Messing Aff. ¶ 19.)

On September 27, 2010, Court Officer Robert Muszynski, posted the "Application and Order of Eviction" on the front door to the Newcastle property. (Early Defs.' Mot., Ex. 2 to Pl.'s Dep.) Above the Court Officer's signature, the following was handwritten: "Eviction Tuesday 9/27/10." (*Id.*)

On or about September 29, 2010, FNMA, through its attorneys, the Orlans Defendants, notified Early Realty that "the court officer has completed the lockout for the property stated." Early Realty then listed the Newcastle property for sale. (Early Realty Aff. ¶¶ 5-6.) Early Realty also placed a lockbox on the front door of the property and displayed a sign in its front window. (*Id.* at ¶ 7.) The Early Defendants attest that they did not remove any personal property from the Newcastle property. (Early Realty Aff.; T. Early Aff.; and L. Early Aff.)

Plaintiff testified that, between September 13, 2010 and October 15, 2010, he went to the Newcastle residence and discovered the "Application and Order of Eviction posted on the front door to the Newcastle property along with the bailiff's card. He also discovered that the house had a new lock and lockbox on it, the mailbox was missing, a real estate sign was on the inside window, and all the personal property that he had left in the house was gone. Upon making this discovery, Plaintiff called the bailiff, Bob Muszynski. He got the bailiff's phone number from the card left on the front door of the Newcastle property. Plaintiff asked the bailiff why his stuff was missing and why the bailiff's card was on the front door. He also told the bailiff that the court order and court date had been rescinded and that the bailiff should have gotten notice. The bailiff told Plaintiff that he had no such notice and was only doing his job. (*Id.* at 49, 98-101.)

After his conversation with the bailiff, Plaintiff drove to the 37th District Court, went to the Clerk's office, and spoke with a clerk. He showed her the court officer/bailiff's letter that was on posted the door. The clerk called the bailiff and asked him why he entered the home when the court order "wasn't true." (Pl.'s Dep. at 46-48, 50-52, 63, 66-67.) Plaintiff gathered from the conversation that the bailiff told the clerk that he had an order and "just did what he would normally do." (*Id.* at 48.) The clerk then told Plaintiff to make a list of the personal belongings that he believed were removed from the Newcastle property. (*Id.* at 101.)

On October 1, 2010, a "Notice to Appear" was mailed to Plaintiff at the Newcastle address and to Defendant FNMA's counsel, Elizabeth Messing at the Orlans firm. (Orlans Defs.' Mot., Ex. 12, 10/1/10 Notice.) The Notice states that it "supersedes all prior court notice," and requires the parties to appear on Friday, October 15, 2010 at 8:45 a.m. for a termination hearing. (*Id.*)

On or about October 15, 2010, the Orlans Defendants learned from the Court that the default judgment had been stricken, that the Writ should not have been signed by the Judge, and that the case was being re-set for a new hearing. (*Id.*)

On January 21, 2011, the 37th District Court entered a second default judgment. (Orlans Defs.' Mot., Ex. 13.)

Plaintiff filed this lawsuit on January 26, 2011.

## II.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is,

pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a

9

genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

## III. Analysis

All Defendants have moved for summary judgment on Plaintiff's claims. As stated above, Plaintiff's Fair Debt Collection Practices Act and Michigan Consumer Protection Act claims against all Defendants are dismissed with prejudice. (Resp. at 16.) As to the remainder of his claims, Plaintiff argues that the September 3, 2010 default judgment was vacated or otherwise set aside and the subsequent September 14, 2010 Order of Eviction or Writ, also signed by the Judge, was invalid when his personal belongings were removed and he was locked out of the Newcastle property. Plaintiff, however, has not produced any court document supporting his claim that the September 3, 2010 default judgment was vacated or set aside before October 1, 2010. By that date, the personal possessions he had left at the Newcastle residence had already been removed. Defendants thus argue that Plaintiff's claims against them must fail because, at the time they acted, they did so under the authority of a default judgment and Writ that were signed by a Judge, entered into the court file, and without notice that the default judgment had been set aside. (Orlans Defs.' Mot., Exs. 9 and 11.) Defendants further argue that Plaintiff's remaining claims should be dismissed because he cannot state a claim for relief on the undisputed facts presented here. This Court agrees with Defendants.

### A. Plaintiff Fails to State a Claim Under Mich. Comp. Laws § 600.2918(1)

Plaintiff claims ejection and detainer under Mich. Comp. Laws § 600.2918(1), which provides in pertinent part that:

> (1) Any person who is ejected or put out of any lands or tenements in a forcible and unlawful manner, or being out is afterwards held and kept out, by force, if he prevails, is entitled to recover 3 times the amount of his actual damages or $200.00, whichever is greater, in addition to recovering possession.

Defendants argue that Plaintiff cannot recover under § 600.2918(1) because he was not ejected from the Newcastle property by use of force or the threat of force. This Court agrees with Defendants.

Interpreting the predecessor to § 600.2918(1) and case law "determining the circumstances that will constitute forcible entry and detainer," the Michigan Supreme Court in 1953 reaffirmed earlier holdings that "the entry or the detainer must be riotous, or personal violence must be used or in some way threatened, or the conduct of the parties guilty of the entry or detainer must be such as in some way to inspire terror or alarm in the persons evicted or kept out -- in other words, the force contemplated by the statute is not merely the force used against, or upon, the property, but force used or threatened against persons, as a means, or for the purpose, of expelling or keeping out the prior possessor." *Patterson v. Dombrowski*, 60 N.W.2d 456, 458-59 (Mich. 1953) (internal quotation marks and citations omitted). Here, as in *Patterson*, there is no claim of actual or threatened force or violence towards Plaintiff when his possessions were removed from the Newcastle property or during the time he and his adult children lived at that property. *See id.* at 459. Accordingly, Plaintiff cannot state a claim for relief under § 600.2918(1).

11

Plaintiff's reliance on an unpublished decision from the Michigan Court of Appeals, *J. Franklin Interests, L.L.C. v. Mu Meng*, No. 296525, 2011 WL 4501841 (Mich. Ct. App. Sept. 29, 2011), for a contrary result is misplaced. First, under Mich. Ct. R. 7.215(C)(1), "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." Second, the facts presented in *J. Franklin Interests* -- the lockout of a tenant by a landlord who physically obstructed the tenant's access to the leased property -- are significantly different than those presented here and in *Patterson*. The Michigan Supreme Court has addressed the issue presented here in a published decision, and this Court will apply the holding of *Patterson* here.

### B. Plaintiff Fails to State a Claim Under Mich. Comp. Laws § 600.2918(2)

Plaintiff claims an unlawful interference with his possessory interest in violation of Mich. Comp. Laws § 600.2918(2), which provides in pertinent part that:

> (2) Any tenant in possession of premises whose possessory interest has been unlawfully interfered with by the owner, lessor, licensor, or their agents shall be entitled to recover the amount of his actual damages or $200.00, whichever is greater, for each occurrence and, where possession has been lost, to recover possession.

Defendants argue that Plaintiff cannot recover under § 600.2918(2) because he was not a tenant of the Newcastle premises at the time his personal property was removed and he was locked out. This Court agrees with Defendants.

The term "tenant" in § 600.2918(2) was defined in *Nelson v. Gray*, 531 N.W.2d 826 (Mich. Ct. App. 1995), as someone who pays rent or has a rental agreement with the owner of the premises:

12

> The antilock statute does not define the word "tenant." When a statute does not define a term, we will construe the term according to its common and approved usage. Resort to dictionary definitions is appropriate to construe the common and approved usage of undefined statutory terms. The term "tenant" has been defined as "a person or group that rents and occupies land, a house, an office, or the like, from another, usu[ally] under the terms of a lease; lessee." *Random House Webster's College Dictionary* (1992). Black's Law Dictionary (6th ed.) defines "tenant" as "one who has the temporary use and occupation of real property owned by another person (called the 'landlord'), the duration and terms of his tenancy being usually fixed by an instrument called a 'lease.'" Also, "[o]ne renting land and paying for it" is considered a tenant." *Id.*

531 N.W.2d at 828 (internal case citations omitted). Plaintiff concedes that when the personal belongings he left behind at the Newcastle property were removed and when the lock was changed on the front door, he did not have a rental agreement for those premises with anyone and was not paying rent. (Pl.'s Dep. at 74, 77-78.) Moreover, while Plaintiff is unable to identify the exact date his personal property was removed, it is not disputed that it occurred after he defaulted on his mortgage, after the Newcastle property was sold to Defendant FNMA at a Sheriff's sale, and after the six month statutory redemption period had expired. He no longer had any legal title to the Newcastle property and did not have any agreement allowing him to occupy the premises. Likewise, Plaintiff presents no evidence that he had the consent, permission, tacit acceptance or passive acquiesce of FNMA -- the property owner -- or any of its agents to occupy the Newcastle premises on the date his personal belongings were removed. Accordingly, Plaintiff cannot claim a common law "tenancy by the years," "tenancy at will," or "tenancy by sufferance" -- each of which requires either "consent on the part of the property owner" or the owner's "tacit[] accept[ance] or passive[] acquiesc[ence] to possession of property by the tenant." *Mills v. County of Lapeer*, No. 2:09-cv-14026-PDB-MAR, 2011 WL 669389, **5-8 (E.D. Mich. Feb.

17, 2011). Finally, as the district court recognized in *Mills*, service of a "Notice to Quit does not alter this conclusion" because this act does not "constitute[] a binding admission" that Plaintiff was a tenant; and even if it were, the issue whether Plaintiff as a tenant "is a legal question and a contrary admission plays little role in a court's answer to such a question." *Id.* at 9.

### C.  Plaintiff Fails to State a Claim of Trespass

Plaintiff alleges a claim for trespass. Defendants argue that, because Plaintiff admits that he was no longer living at the Newcastle premises on the date the personal belongings he left behind were removed, he cannot establish a trespass claim against them. This Court agrees with Defendants.

"A trespass is an unauthorized invasion on the private property of another." *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 691 (Mich. Ct. App. 2010). Moreover, under Michigan law, a claim for trespass requires Plaintiff to establish that he actually possessed or occupied the premises on the date his personal belongings were removed. *See Bradford v. Goldman*, 287 N.W. 541, 543 (Mich. 1939) (observing that "[w]ith regard to proof of possession, a plaintiff in a trespass action must show actual possession of the property trespassed on at the time the trespass was committed" and "[a]ctual possession means occupancy."). Plaintiff does not argue that he still lived at his former residence. Rather, he argues that it is enough that he intended to return to gather the personal belongings that he had left behind. Plaintiff, however, cites no authority in support of this argument. Unlike the definition of "occupancy" he relies upon, Plaintiff concedes that he

14

was not occupying the Newcastle premises "with the intent of acquiring a right of ownership in it." (Pl.'s Resp. at 11, citing Black's Law Dictionary (2d ed), definition of "occupancy.")

### D. Plaintiff Fails to State a Claim for Invasion of Privacy

Plaintiff next alleges a common-law claim for invasion of privacy. Under Michigan law, an invasion of privacy claim "has evolved into four distinct tort theories," *Lewis v. LeGrow*, 670 N.W.2d 675, 687 (Mich. Ct. App. 2003), and Plaintiff identifies his claim under the theory of "intrusion upon another's seclusion or solitude, or into another's private affairs." *Id.* (Pl.'s Resp. at 12.) He argues that he can establish a claim for invasion of privacy under this theory because Defendants or their agents entered his home with a Writ of Eviction that was fraudulently obtained through false statements. Despite his attorney's factually unsupported claims to the contrary, Plaintiff provides the Court with no evidence that Defendants or their agents obtained the Writ of Eviction at issue here by making false statements to the 37th District Court. Rather, even construing the evidence in the light most favorable to Plaintiff, it is undisputed that the Orlans Defendants prepared the Writ of Eviction based on a default judgment that was signed by a judge of the 37th District Court and served on Plaintiff. Plaintiff has not provided the Court with admissible evidence that rebuts the Orlans Defendants' claims that they had no notice that the default judgment was being set aside until the 37th District Court sent them Notice to Appear in October 2010 -- after Plaintiff's personal belongings has been removed. Plaintiff's testimony that a clerk from the 37th District Court told him that the September 2010 default judgment would be set aside is insufficient to establish that the Orlans Defendants were are of that fact when they prepared the Writ. Similarly, although Exhibit 9 to the Orlans Defendants' motion

15

shows the September 3, 2010 default judgment with an "X" through it, there is no evidence as to when this occurred. There is, however, undisputed evidence that the Orlans Defendants were unaware of this "X"ed out document and had no notice whatsoever that the September 3, 2010 default judgment had been set aside when they submitted the Application and Order of Eviction to the 37th District Court on September 14, 2010. Accordingly, there is no evidence that the Writ of Eviction was obtained through fraud. If the 37th District Court had indeed set aside the default judgment before a judge of that Court signed the Writ of Eviction, then that Writ was signed and executed as a result of an error by that Court, not from any fraud committed by the Orlans Defendants.

Moreover, to establish a prima facie case for invasion of privacy under the theory Plaintiff asserts, he must establish: "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." *Lewis*, 670 N.W.2d at 687 (internal quotation marks and citation omitted). As the Orlans Defendants correctly point out, Plaintiff has not come forward with any evidence establishing the first element -- the existence of a secret and private subject matter. He only alleges that his personal property (listed in Ex. 1 to Pl.'s Dep.) was removed from the Newcastle property. There is no evidence that any secret or private subject matter existed in those personal belongings. Because Plaintiff cannot establish the first element of his prima facie case, his claim for invasion of privacy fails. Even if Plaintiff could establish this first element, he could not establish the third for all the reasons stated above.

### E. Plaintiff Fails to State an Abuse of Process Claim

Count V of Plaintiff's complaint alleges an abuse of process claim against the Orlans and FNMA Defendants asserting that they abused the eviction proceedings in the 37th District Court by falsely representing that a default judgment had been obtained and then improperly seeking and obtaining a Writ of Eviction against Plaintiff. Defendants argue that Plaintiff cannot establish the essential elements of this claim. The Court agrees with Defendants.

"To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Yoost v. Caspari*, ___ N.W.2d ___, 2011 WL 4104505, at *6 (Mich. Ct. App. Sept. 15, 2011) (internal quotation marks and citation omitted). An action for abuse of process lies for the improper use of process <u>after</u> it has been issued, not for maliciously causing it to issue." *Id.* (internal quotation marks and citations omitted) (emphasis added). Thus, the regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process. *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that the Orlans Defendants and FNMA abused Michigan's summary eviction process by misrepresenting facts they either knew or should have known were false, i.e., that a default judgment had been entered against Plaintiff and a Writ of Eviction could issue. Plaintiff further alleges that Defendants did so with the bad intent of gaining access to the Newcastle premises so as to remove Plaintiff's personal belongings and to change the locks. (Pl.'s Compl. at ¶¶ 43-46.) Read in the light most favorable to Plaintiff,

this is not enough.  Under Michigan law, Plaintiff must establish that the improper use of process came <u>after</u> the Writ of Eviction had been issued, not before.  Moreover, Plaintiff has not and cannot establish that Defendants had an ulterior motive in obtaining the Writ of Eviction.  The purpose of a Writ of Eviction is to gain access to property after a default judgment has been issued, to remove whatever is left behind, and to change the locks.  To establish "[a] meritorious claim of abuse of process," Plaintiff must show that Defendants used "a proper legal procedure for a purpose collateral to the intended use of that procedure . . . ."  *Dalley*, 788 N.W.2d at 322 (internal quotation marks and citations omitted).  Plaintiff has not done that here.

### E.  Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

Finally, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress must be dismissed because he cannot establish the essential elements of that claim.  This Court agrees with Defendants.

To establish a claim of intentional or reckless infliction of emotional distress, Plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."  *Lewis*, 670 N.W.2d at 689 (internal quotation marks and citations omitted).  "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Id.* (internal quotation marks and citations omitted).  Moreover, "it is generally the trial court's duty to determine whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Id.*

In support of this claim, Plaintiff reasserts his arguments that the Orlans Defendants knew the September default judgment had been set aside and intentionally misrepresented otherwise in their Application and Order of Eviction. Plaintiff, however, presents no evidence showing that the Orlans Defendants knew the default judgment was set aside before they submitted the Application and Order of Eviction to the 37th District Court for a judge's signature and subsequent execution.

## IV. Conclusion

For the above-stated reasons, Defendants' motions for summary judgment are GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.


　　　　　　　　s/Nancy G. Edmunds  
　　　　　　　　Nancy G. Edmunds  
　　　　　　　　United States District Judge

Dated: January 17, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 17, 2012, by electronic and/or ordinary mail.

　　　　　　　　s/Carol A. Hemeyer  
　　　　　　　　Case Manager